UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

WORLDHOMECENTER.COM, INC.,

                    Plaintiff,

        - against -

KWC AMERICA, INC.,

                    Defendant.

------------------------------------X

**M E M O R A N D U M**

**A N D**

**O R D E R**

10 Civ. 7781 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Worldhomecenter.com, Inc. ("Plaintiff") brought this action against defendant KWC America, Inc. ("KWC") alleging violations of New York's antitrust law, N.Y. Gen. Bus. Law § 340, and consumer protection law, N.Y. Gen. Bus. Law § 349. Plaintiff also seeks declaratory and injunctive relief for alleged violations of N.Y. Gen. Bus. Law § 369-a and § 369-b. Defendant now moves to dismiss the action for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the motion is granted.

## BACKGROUND

    Plaintiff is a New York corporation that sells home improvement products through its web sites, *Homecenter.com* and *Supplyhouse.com*, and by telephone. (Compl. ¶¶ 4; 6.) Defendant is

-1-

a Georgia corporation that manufactures and sells faucets, plumbing accessories, and kitchen accessories to its exclusive distributors for resale to the public. (Compl. ¶¶ 5; 7.) This action was originally filed in the Supreme Court of the State of New York, County of New York, and was removed to this Court based on diversity of citizenship, pursuant to 28 U.S.C. §§ 1332, 1441(a).

Plaintiff purchases KWC's products directly from KWC and other distributors and offers them for resale to customers online. (Compl. ¶ 8.) According to the complaint, due to the low overhead associated with an Internet business, plaintiff is able to offer KWC's products at lower prices than "traditional display room retailers." (*Id.*)

KWC has instituted a policy known as the Internet Advertising Policy ("IAP") which provides, in pertinent part:

> KWC America has unilaterally determined that it will sell its products only to those accounts that . . . [d]o not use the Internet . . . to advertise KWC America products to the general public at a price that is more than twenty percent (20%) for KWC branded products and twenty-five percent (25%) for HANSA branded products below the list price set forth in the effective KWC and HANSA Price Books.

(Haller Decl. Ex. E.[1]) According to the IAP, this provision "appl[ies] to all levels/pages on a website, other than pages associated with an intent to purchase. Actual prices charged customers [sic] may be provided by telephone, e-mail response, and product purchase confirmation webpages or communications." (*Id.*) The IAP also specifies that "[t]his policy applies only to advertised prices and does not apply to actual resale prices." (*Id.*) Furthermore, the IAP states that "KWC America will terminate its business relationship with any account that violates this Policy." (*Id.*)

According to the complaint, KWC has refused to ship and fill orders submitted by plaintiff unless and until plaintiff complies with the IAP. (Compl. ¶ 15.) The complaint also states that plaintiff has "refus[ed] to agree to sell KWC's products at a fixed price" but does not indicate whether plaintiff has refused to comply with the IAP. (Compl. ¶ 16.)

In addition to adopting the IAP, KWC has posted a disclaimer on its website, *KWCAmerica.com*, concerning consumers who purchase products from unauthorized dealers. The disclaimer provides:

---

[1] A copy of the Internet Advertising Policy is attached to the defendant's motion as Exhibit E and is incorporated by reference. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam).

> [w]e cannot assist with problems that may
> occur from purchases from unauthorized
> channels, this includes online auctions and
> online purchases from dealers other than
> those listed in our Where to Buy. We require
> proof of purchase when processing warranty
> claims. This means: No Internet Selling, No
> Mail Order Sales, No Mass Merchants.

(Compl. Ex. B.) The disclaimer also states: "[i]f you purchase KWC/HANSA products on the internet, be advised: WE WILL NOT HONOR ANY WARRANTY CLAIMS ON PRODUCTS PURCHASED FROM UNAUTHORIZED INTERNET SELLERS." (*Id.*) According to the complaint, KWC has indicated that it will not honor warranties on KWC products sold by the plaintiff. (Compl. ¶ 26.)

### DISCUSSION

### I.   Legal Standard

When deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiffs' favor. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where a plaintiff has not "nudged [its]

claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Twombly*, 550 U.S. at 570. This pleading standard applies in "all civil actions." *Iqbal*, -- U.S. --, 129 S. Ct. at 1953.

## II.  Claims Asserted Against KWC

Plaintiff asserts four causes of action against KWC. We address each in turn.

### A.   Donnelly Act Claim

In its first cause of action, plaintiff alleges that KWC's policies constitute vertical price fixing in violation of New York's antitrust statute, the Donnelly Act. N.Y. Gen. Bus. Law § 340 *et seq.*

#### 1.   Legal Standard

The Donnelly Act declares "every contract, agreement, arrangement, or combination whereby . . . competition . . . in the conduct of any business, trade or commerce . . . is or may be restrained . . . to be against public policy, illegal and void." N.Y. Gen. Bus. Law § 340. Despite this broad language, the Donnelly Act has long been understood to prohibit only 'unreasonable' restraints on trade. *Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 333, 525 N.Y.S.2d 816, 819 (1988) (citing *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958)). Courts

generally construe the Donnelly Act in accordance with its federal analogue, the Sherman Act, 15 U.S.C. § 1 *et seq.*, upon which it was modeled. *See People v. Rattenni*, 81 N.Y.2d 166, 171, 597 N.Y.S.2d 280, 283 (1993). Indeed, the New York Court of Appeals has stated that "the Donnelly Act — often called a 'Little Sherman Act' — should generally be construed in light of federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result." *Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 335, 525 N.Y.S.2d 816, 820 (1988).

To plead a violation of the Donnelly Act, a plaintiff must allege that the defendant's conduct is anticompetitive under either the rule of reason or the *per se* rule. The accepted standard for evaluating most Donnelly Act claims is the rule of reason. *Rattenni*, 81 N.Y.2d at 171, 597 N.Y.S.2d at 283. This legal standard requires the court to weigh "all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 907 (2007). When applying the rule of reason, "[a]ppropriate factors to take into account include specific information about the relevant business, [] the

restraint's history, nature, and effect, [and] whether the businesses involved have market power." *Id.* at 885-86 (internal citations and quotations omitted).

In addition to the rule of reason, there is also a rule of *per se* illegality for "certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958); *Rattenni*, 81 N.Y.2d at 171-72, 597 N.Y.S.2d at 283. For example, horizontal agreements among competitors to fix prices or divide markets have been deemed *per se* unlawful. *Leegin*, 551 U.S. at 886.

### 2.   Applicability of the Per Se Rule

In the present case, plaintiff contends that the *per se* rule applies to its Donnelly Act claim whereas KWC argues that the rule of reason standard applies. Plaintiff's position is that the KWC's IAP is vertical resale price maintenance ("RPM") agreement. Vertical RPM agreements are generally defined as agreements between a manufacturer and its distributors to set the minimum price at which distributors can sell the manufacturer's goods. Like horizontal RPM agreements, vertical RPM agreements were long treated as *per se* violations of § 1 of the Sherman Act. *See Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373

–7–

(1911). Some New York courts have also treated vertical RPM agreements as *per se* Donnelly Act violations. *See, e.g., George C. Miller Brick Co. v. Stark Ceramics, Inc.*, 2 A.D.3d 1341, 770 N.Y.S.2d 235 (4th Dep't 2003). However, in 2007, *Dr. Miles* was overruled by the Supreme Court's decision in *Leegin Creative Leather Products v. PSKS, Inc.*, which abandoned the *per se* rule for vertical RPM agreements and instead applied the rule of reason to such claims. 551 U.S. 877, 907 (2007).

After *Leegin*, it is uncertain whether New York courts evaluating vertical RPM claims brought under the Donnelly Act will continue to apply the *per se* rule or will follow *Leegin* in adopting the rule of reason. Specifically, the New York Court of Appeals has not addressed whether *Leegin* changes the rule applicable to vertical RPM claims under the Donnelly Act. However, at least two courts in this district have addressed this issue and concluded that the rule of reason now applies to such claims. *See WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*, No. 10 Civ. 4092 (RJS) (S.D.N.Y. July 5, 2011); *WorldHomeCenter.com, Inc. v. Franke Consumer Prods., Inc.*, No. 10 Civ. 3205 (BSJ), 2011 WL 2565284 (S.D.N.Y. June 22, 2011). Notably, both *Franke* and *PLC Lighting* were brought by the present plaintiff against

other home accessories manufacturers with similar policies to
those at issue here.

Here, plaintiff contends that *Leegin* is inapplicable because
New York has a state policy that justifies a departure from
federal precedent. Specifically, in support of its argument that
the *per se* rule applies to its Donnelly Act claim of vertical
RPM, plaintiff argues that: section 369-a of New York's General
Business Law evidences a state policy in New York against price
fixing;[2] this statute and its legislative history justify a
divergence in the way state and federal antitrust laws apply to
vertical RPM agreements; and therefore courts must treat such
agreements as *per se* violations of the Donnelly Act,
notwithstanding the decision of the Supreme Court of the United
States in *Leegin*.

We recognize this argument has its adherents. *See* Jay L.
Himes[3], *New York's Prohibition of Vertical Price-Fixing*, N.Y.L.J.
Jan. 29, 2008; Robert L. Hubbard[4], *Protecting Consumers Post-*
Leegin, 22 Antitrust 41, 43 (2007). However, plaintiff's position

---

[2] Section 369-a is entitled "Price Fixing Prohibited" and provides, "any
contract provision that purports to restrain a vendee of a commodity from
reselling such a commodity at less than the price stipulated by the vendor or
producer shall not be enforceable or actionable at law."

[3] The article identifies Jay L. Himes as the chief of the antitrust bureau of
the Office of the Attorney General of New York.

[4] The article identifies Robert Hubbard as the director of litigation of the
antitrust bureau of the Office of the Attorney General of New York.

has not been endorsed by any court of which we are aware. *See, e.g., WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*, No. 10 Civ. 4092 (RJS), slip op. at 10 (S.D.N.Y. July 5, 2011) ("In the absence of any authority construing § 369-a as relevant, much less controlling, with respect to New York antitrust law, the Court declines to adopt such a view"); *WorldHomeCenter.com, Inc. v. Franke Consumer Prods., Inc.*, No. 10 Civ. 3205 (BSJ), 2011 WL 2565284, at *4 (S.D.N.Y. June 22, 2011) (rejecting the theory "that pleading a violation of § 369-a provides a means to establish *per se* liability under the Donnelly Act"); *State v. Tempur-Pedic Int'l, Inc.*, 30 Misc. 3d 986, 991, 916 N.Y.S.2d 900, 905 (Sup. Ct. N.Y. Cnty. Jan. 14, 2011) (rejecting the argument that § 369-a of the General Business Law renders vertical RPM agreements illegal in New York).

While we see no reason to depart from the decisions in *PLC Lighting*, *Franke*, and *Tempur-Pedic* that the rule of reason is the standard applicable to a vertical RPM claim under the Donnelly Act, we are reluctant to reach the question of what standard a New York court would apply before we are satisfied that the complaint states a plausible claim under either standard. Because we conclude that the complaint does not sufficiently allege a Donnelly Act claim, we do not reach the issue of whether New York

law will diverge from federal law post-*Leegin. See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 499-500 (1941) ("[N]o matter how seasoned the judgment of the district court may be, it cannot escape being a forecast rather than a determination" of unclear state law).

### 3.   Adequacy of the Allegations

Plaintiff alleges that the IAP is a vertical RPM agreement because it "restrains price competition by purporting to disallow communication of sales below the fixed price." (Pl.'s Mem. Opp. 10.) KWC offers two reasons why its IAP is not a vertical RPM agreement: first, because it disallows communication only of advertised prices, not of resale prices; and second, because it is a unilateral policy, not an agreement. Indeed, the language of the IAP is unmistakably clear on each of these points:

> This Policy applies only to advertised prices and does not apply to actual resale prices . . .
> This Policy is a unilateral statement of KWC America's preferences concerning the type of account to which KWC America chooses to distribute the products that are subject to the Policy. It is not the intent or purpose of this Policy to restrict, coerce, force or reach agreement with a retailer to charge a particular price for any KWC America product.

(Haller Decl. Ex. E.) Nonetheless, plaintiff contends, first, that there is no distinction between advertised and resale prices

-11-

on the Internet, and second, that agreements exist between KWC and other distributors whose businesses are threatened by the plaintiff's Internet sales. We reject both of plaintiff's arguments for the reasons set forth herein and discuss them in turn.

### a.   Distinction Between Advertised and Resale Prices

First, plaintiff contends that a there is no distinction between advertised prices and resale prices on the Internet. Plaintiff's theory turns on a comparison to traditional brick-and-mortar retailers. Whereas a traditional brick-and-mortar retailer advertises to potential customers by "paying to post [] product prices elsewhere" and also communicates resale prices directly to existing customers who are present at the store, an Internet retailer may accomplish both of these goals simultaneously by posting a single price on its website.[5] Plaintiff asserts that this feature of Internet retail collapses the distinction between the price at which a product is advertised and the price at which it is sold.

---

[5] In the year 2011, we assume general familiarity with the basic notion that search engines locate and index webpages in order to present users with appropriate results to search queries, including queries for the prices of goods offered for sale.

At least one district court, in a case brought by the present plaintiff and decided prior to the *Leegin* decision, appears to have been persuaded by this reasoning. *See Worldhomecenter.com, Inc. v. L.D. Kichler Co.*, No. 05 Civ. 3297 (DRH), 2007 WL 963206 (E.D.N.Y. March 28, 2007) (denying motion to dismiss Sherman Act claim that an internet minimum advertised price policy constitutes vertical price fixing). We, however, are not persuaded.

It may be true that in certain circumstances any means of communicating prices can also be a form of advertising. But the advertised prices on a website are not the only means an Internet retailer has at its disposal to communicate resale prices. Indeed, as Judge Jones recently stated:

> [u]nlike the prior cases cited by Plaintiff where an advertising policy was held to restrain prices, the [] policy here provides internet retailers with more than one way to communicate lower prices to clients, either by allowing customers to call or email for a price quote or by offering a coupon to be applied at checkout.

*WorldHomeCenter.com, Inc. v. Franke Consumer Prods., Inc.*, No. 10 Civ. 3205 (BSJ), 2011 WL 2565284, at *5 (S.D.N.Y. June 22, 2011).

That reasoning is equally applicable here. Like the policy at issue in *Franke*, KWC's IAP states that "[a]ctual prices charged customers may be provided by telephone, e-mail response,

-13-

and product purchase confirmation webpages or communications." (Haller Decl. Ex. E.) By permitting these means of communicating actual resale prices to customers, KWC did not prevent plaintiff from selling its products at whatever price plaintiff wished, but only set a floor on the discount prices that plaintiff could advertise. *See Campbell v. Austin Air Sys., Ltd.*, 423 F. Supp. 2d 61, 69-70 n.6 (W.D.N.Y. 2005) (holding policy that "restricts only the minimum price for which a dealer could advertise on the Internet" and "explicitly states that a dealer may sell [] for any price" not to be vertical RPM agreement); *Blind Doctor, Inc. v. Hunter Douglas, Inc.*, No. C-04-2678 (MHP), 2004 WL 1976562, at *2 & n.5 (N.D. Cal. Sept. 7, 2004) ("Courts have long recognized that such advertising restrictions do not rise to the level of an antitrust violation").

Therefore, we conclude that the IAP cannot be the basis of a vertical RPM claim because it does not restrain resale prices, but merely restricts advertising. Accordingly, the *per se* rule is inapplicable to plaintiff's claim.[6]

---

[6] We note that, even if plaintiff were correct that the policy at issue constituted a vertical RPM agreement, we see little merit in plaintiff's theory that N.Y. Gen. Bus. Law § 369-a, which renders such agreements unenforceable but not illegal, is a reason to treat them as *per se* violations of the Donnelly Act. To the contrary, while the Donnelly Act makes unreasonable price restraints unlawful, section 369-a has the distinct aim of preventing parties from seeking the assistance of the courts to enforce these restraints. As there is no suggestion that KWC has ever sought to conscript the courts into enforcing the IAP, § 369-a is not relevant here.

### b.   A Unilateral Policy is Not Evidence of an Agreement or Conspiracy

We next turn to whether the IAP is nonetheless a non-price restraint of competition in violation of the Donnelly Act. The rule of reason is the standard applicable to vertical non-price restrictions. *See Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 59 (1977).

Like the Sherman Act, the Donnelly Act proscribes only concerted action in the form of a contract, agreement, arrangement, or combination. N.Y. Gen. Bus. Law § 340. Indeed, a manufacturer's independent, unilateral actions are outside the scope of the Donnelly Act. *See State v. Mobil Oil Corp.*, 38 N.Y.2d 460, 464, 381 N.Y.S.2d 426, 428 (1976); *see also Tempur-Pedic Int'l*, 30 Misc. 3d at 994 ("A manufacturer's independent acts to set minimum resale prices, without seeking agreement from its retailers, do not amount to a contract.").

Plaintiff alleges that KWC has obtained agreements from its other distributors to adhere to the IAP (Compl. ¶ 33(a)), and that these agreements supply the requisite element of concerted action necessary to plead a Donnelly Act violation. KWC replies that plaintiff has not alleged any specific facts indicating the other distributors it refers to, the dates or places of any alleged agreements, or any actions taken to enforce them.

Further, the IAP itself declares that it is a unilateral policy and that it is not intended to be an agreement. (Haller Decl. Ex. E.)

Plaintiff has failed to allege "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Plaintiff appears to argue that we may infer the existence of agreements between KWC and other distributors because, without such agreements, the IAP would not be in KWC's own best interests. Thus, plaintiff asserts that there is a *quid pro quo* in which the IAP protects KWC's other dealers from Internet competition, and in exchange, these dealers agree to continue distributing KWC's products. However, specific factual allegations of such an arrangement are absent from the complaint and therefore plaintiff fails to state a plausible claim under the Donnelly Act.

Plaintiff's argument is also a *non sequitur*. While KWC has not offered a detailed explanation of its reasons for imposing the IAP, and is not obligated to do so, it may have reasonable justifications for its actions. For example, KWC may wish to encourage traditional distributors to present KWC products in display rooms where customers can view and touch sample fixtures, see demonstrations, or personally interact with knowledgeable

employees. Absent an incentive to do so, these distributors may
not think it worth the trouble of providing these benefits to
customers, if their customers can then easily locate the same
products advertised at lower prices on the Internet. Thus, KWC
may have adopted the IAP to provide an incentive for display room
distributors to continue devoting energy, expense, and floor
space to KWC products. *See United States v. Colgate & Co.*, 250
U.S. 300, 306-07 (1919) (recognizing the "right of [a] trader or
manufacturer engaged in an entirely private business, freely to
exercise his own independent discretion as to parties with whom
he will deal . . . [and] announce in advance the circumstances
under which he will refuse to sell.").

It does not follow from any of the above that an agreement
between KWC and these distributors has taken place, or that KWC's
actions are contrary to its own interests. The mere observation
that the IAP is mutually beneficial to KWC and its non-Internet
distributors is not an adequate factual allegation of agreement
or conspiracy. Nor does plaintiff allege additional facts from
which an agreement could be inferred. Thus, plaintiff has failed
to adequately allege a violation of the Donnelly Act.[7]
Consequently, the Donnelly Act claim must be dismissed.

---

[7] Even assuming plaintiff had adequately alleged an agreement, there have been

-17-

Finally, because we conclude that plaintiff's fails to state a claim under the Donnelly Act, we need not reach defendant's suggestion that the Sherman Act preempts the Donnelly Act.

### B.    Deceptive Practices Claim

In its second cause of action, plaintiff alleges that KWC's warranty disclaimer is a false and deceptive trade practice that violates New York's consumer protection law, N.Y. Gen. Bus. Law § 349.

Under section 349, "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349. Although violations of this statute are prosecuted by the New York Attorney General, *see* N.Y. Gen. Bus. Law § 349(b)-(g), the statute was amended in 1980 to provide a private right of action for citizens who wish to recover damages or to enjoin an unlawful act or practice. *See* N.Y. Gen. Bus. Law § 349(h).

To state a claim under § 349(h), a plaintiff must show that the defendant has engaged in: (1) consumer-oriented conduct that

---

no factual allegations regarding the relevant market, the actual effects of the IAP on this market, or the market power of the parties, all of which would be necessary to support a rule of reason analysis. Thus, even if KWC had structured the IAP as an agreement with distributors, something it explicitly did not do, the factual allegations in the complaint would still be insufficient to state a Donnelly Act violation under the rule of reason standard.

is (2) materially misleading and that (3) plaintiff suffered injury as a result of the deceptive act or practice. *City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616, 621, 883 N.Y.S.2d 772, 776 (2009). A plaintiff alleging an injury that is indirect or derivative, such that it arises solely as a result of injuries sustained by another party, lacks standing to pursue a § 349 claim. *Id.* at 622. (citing *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA, Inc.*, 3 N.Y.3d 200, 207, 785 N.Y.S.2d 399, 404 (2004)). However, entities other than consumers, such as business competitors, have been held to have standing to bring a claim "so long as harm to the public at large is at issue." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995).

Plaintiff alleges that KWC's stated policy of refusing to honor warranties for customers of Internet resellers is a deceptive practice. The allegation is not that plaintiff's customers are deceived if they purchase KWC products unaware that their warranties will not be honored; rather, it is that those customers who read KWC's warranty policy are deceived as to their rights under the law in New York, specifically § 369-b of the General Business Law, which provides that any attempt by a manufacturer to limit its warranty or guarantee of merchandise

"solely for the reason that such merchandise is sold by a particular dealer or dealers" will be void. Plaintiff's theory appears to be that if KWC actually refused to honor the warranty of a New York consumer because that consumer purchased KWC products from plaintiff on the Internet, then KWC's refusal would be void under § 369-b, and therefore it is deceptive for KWC's policy to assert that KWC will take actions which are void under the law.

Plaintiff's effort to backdoor a § 369-b claim for which there is no private right of action, *see discussion infra*, into a deceptive practices claim, while clever, is unavailing. Plaintiff has not identified any harm to itself or to the public at large which might afford it standing to assert competitive harms, *see Securitron Magnalock*, 65 F.3d at 264, and therefore has failed to satisfy the third element of a deceptive practices claim, sufferance of an injury. Specifically, plaintiff has not even alleged the existence of any consumer whose warranty claim has been denied by KWC as a result of having purchased a KWC product from plaintiff, an occurrence of which it would presumably be aware. Thus, any claim of "loss of profits, loss of established business dealings and prospective business opportunities, and damage to reputation" is purely speculative. (Compl. ¶ 41.) In

-20-

fact, some consumers may care nothing at all about warranties and simply want to locate KWC products at the lowest possible resale price. Astute consumers might even infer that unauthorized sellers on the Internet have the best deals available since the cost of warranty coverage is not built into their prices, thereby benefitting plaintiff's business.

Nor is it clear that KWC's warranty policy would violate § 369-b. This is because KWC's blanket disclaimer of warranties for all products sold by "unauthorized Internet sellers" may be too general to fit within the statutory language of § 369-b, which voids warranty disclaimers for products "sold by a *particular* dealer or dealers." N.Y. Gen. Bus. Law § 369-b (emphasis added).

Therefore, for these several reasons, plaintiff's deceptive practices claim must be dismissed.

### C. Declaratory and Injunctive Relief

In its third and fourth causes of action, plaintiff seeks declaratory and injunctive relief. Specifically, plaintiff seeks a declaratory judgment that KWC's IAP is "void and unenforceable" under section 369-a of the General Business Law and that KWC's warranty policy "constitutes a violation of" section 369-b of the General Business Law. (Compl. ¶ 45-46.) In addition, plaintiff

asks the Court to enjoin KWC from taking any actions to enforce either policy.

As a threshold matter, neither section 369-a nor section 369-b expressly provides for a private right of action. *See* N.Y. Gen. Bus. Law §§ 369-a, 369-b. Absent an express private right of action, New York courts will only conclude that "a private right of action may be fairly implied" where: (1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose; and (3) creation of such a right would be consistent with the legislative scheme. *See Sheehy v. Big Flats Community Day*, 73 N.Y.2d 629, 633, 543 N.Y.S.2d 18, 20 (1989).

Notably, plaintiff has failed to address the factors we must consider in order to find an implied private right of action. Nonetheless, it is apparent that plaintiff is not among the class for whose benefit § 369-a was enacted. Section 369-a applies only to contract provisions which restrain resale prices, yet plaintiff was not a party to any contract regarding prices, but rather was merely subjected to a unilateral policy restricting advertising. In addition, the legislative scheme embodied in Article 24-A of the General Business Law, where § 369-a and §

369-b are found, only envisions enforcement by the New York Attorney General, and does not refer to enforcement by private citizens. *See, e.g.*, N.Y. Gen. Bus. Law § 369-e, § 369-ee, § 369-eee. The Attorney General is also empowered to take action under N.Y. Executive Law § 63(12) against any person who demonstrates "persistent fraud or illegality in the carrying on, conducting or transaction of business." We conclude that implying a private right of action would be inconsistent with this legislative scheme, and plaintiff may not pursue declaratory or injunctive relief under § 369-a.

Similarly, private enforcement under § 369-b is inconsistent with the legislature's chosen scheme of enforcing Article 24-A through actions by the Attorney General, and thus we conclude that no private right of action can be implied under § 369-b.

In addition, even if a private right of action were found to exist under § 369-b, the plaintiff has not demonstrated any injury caused by KWC's warranty policy. A plaintiff seeking declaratory relief must suffer an 'injury in fact.' *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To meet the requirement of injury in fact, a plaintiff must demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical." *Id.* Plaintiff's memorandum of law fails to address this issue in any meaningful way. Nonetheless, the same failure to identify any injury from KWC's warranty policy, which required dismissal of plaintiff's deceptive practices claim under § 349(h), also demonstrates that plaintiff lacks standing to challenge the validity of the policy directly under § 369-b.

Finally, because we conclude that plaintiff has not alleged facts supporting irreparable harm or a likelihood of success on the merits, it is clear that plaintiff is not entitled to injunctive relief.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint is granted.

Dated:     New York, New York
           September 15, 2011

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

        Copies of the foregoing Order have been mailed on this date to the following:

**Attorneys for Plaintiff**
Lawrence R. Lonergan, Esq.
Woods & Lonergan, LLP
292 Madison Avenue, 22nd Floor
New York, NY 10017

**Attorneys for Defendant**
David W. Haller, Esq.
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018

Michael J. Fanelli, Esq.
Ross A. Demain, Esq.
Covington & Burling, LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004